USCA1 Opinion

 

 ____________________ No. 91-2337 LEONEL BUENROSTRO, ET AL., Plaintiffs, Appellees, v. PABLO COLLAZO, a/k/a PABLO COLLAZO MARRERO, ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ ____________________ Before Selya and Stahl, Circuit Judges, ______________ and Skinner,* District Judge. ______________ ____________________ John F. Nevares, with whom Annabel Rodriguez, Solicitor ________________ __________________ General, Reina Colon, Assistant Solicitor General, Silvio Cancio, ___________ _____________ and Saldana, Rey & Alvarado were on brief, for appellants. _______________________ Francisco A. Besosa, with whom Goldman Antonetti Ferraiuoli ___________________ ____________________________ & Axtmayer was on brief, for appellees. __________ ____________________ August 26, 1992 ____________________ ____________________ *of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. Plaintiff-appellee Leonel SELYA, Circuit Judge _______________ Buenrostro, portraying himself as a victim of mistaken identity and misplaced zeal, sued a number of police officers under 42 U.S.C. 1983 (1988).1 The defendants unsuccessfully attempted to pretermit the suit on qualified immunity grounds. The district court denied their motion for summary judgment. We affirm. I I _ Consistent with the method of Fed. R. Civ. P. 56(c), we take the record in the light most hospitable to the party opposing summary judgment and indulge all reasonable inferences favorable to him. See Garside v. Osco Drug, Inc., 895 F.2d 46, ___ _______ _______________ 48 (1st Cir. 1990). On March 29, 1988, the extradition squad raided Buenrostro's home, hauled him out, and arrested him pursuant to a "wanted person" request (WPR) from the State of New York. The police admittedly acted in the absence of an arrest warrant, a search warrant, or any exigent circumstances sufficient to justify the intrusion. As a result of this arrest, appellee was handcuffed, ____________________ 1The defendants include Pablo Collazo Marrero, Angel Morales Gonez, Edwin Teruel, and Jose M. Collazo, members of the Puerto Rico Police Department's Division of Special Arrests and Extraditions; Armando Tapia Suarez, the head of that Division; and Carlos Lopez Feliciano, the Superintendent of Police. Although other defendants were also sued, these six officers are the sole appellants in this proceeding. For ease in reference, we disregard for the time being that Buenrostro's conjugal partnership and family members are named plaintiffs and treat Buenrostro as if he alone was the plaintiff-appellee. 2 taken to police headquarters, and locked in a cell. Subsequently, a local magistrate determined that there was probable cause to detain him while extradition proceedings ran their course. Despite a number of red flags e.g., Buenrostro's claims that the probable-cause determination was based on false accusations mouthed by members of the extradition squad, his continuing protests of innocence, significant discrepancies between the description of the suspect mentioned in the WPR and Buenrostro's physical characteristics, and available (but unused) fingerprint evidence Buenrostro remained immured in what the district court termed "horrific conditions" for thirty-one days. Finally, a more thorough examination of New York's extradition request was undertaken, and the Puerto Rican authorities admitted that they had arrested the wrong man. Buenrostro was released. Not long thereafter, Buenrostro sued for damages. He alleged in his complaint that his constitutional rights had been infracted in various ways. He also asserted pendent claims. In due course, the appellants sought brevis disposition based on ______ qualified immunity. When the district court denied their Rule 56 motion, Buenrostro v. Collazo, 777 F. Supp. 128 (D.P.R. 1991), __________ _______ they filed this appeal. II II __ A. A. __ Ordinarily, we would not entertain an immediate appeal from a denial of summary judgment. See, e.g., Fisichelli v. City ___ ____ __________ ____ Known as the Town of Methuen, 884 F.2d 17, 18 (1st Cir. 1989); _____________________________ 3 see also 28 U.S.C. 1291 (1988) ("[t]he courts of appeals . . . ___ ____ shall have jurisdiction of appeals from all final decisions of _____ the district courts") (emphasis supplied). Nevertheless, the denial of a government actor's dispositive pretrial motion premised on qualified immunity falls within a narrow exception to the finality principle and is, therefore, immediately appealable. See Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985); Roque- ___ ________ _______ ______ Rodriguez v. Lema Moya, 926 F.2d 103, 105 (1st Cir. 1991); _________ __________ Fisichelli, 884 F.2d at 18. The window of opportunity, however, __________ is tiny. "Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, any additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final judgment rule in order for us to address it on an interlocutory appeal." Roque-Rodriguez, 926 F.2d at 105 (citations and _______________ internal quotation marks omitted); see also Domegan v. Fair, 859 ___ ____ _______ ____ F.2d 1059, 1061-62 (1st Cir. 1988). In this case, there is no other basis for earlier-than- usual review. It follows inexorably that, for present purposes, we must focus exclusively upon the question of whether the defense of qualified immunity, as invoked by the appellants, shielded them from liability for money damages, and from the concomitant burden of a trial, arising out of the alleged constitutional deprivation. See Roque-Rodriguez, 926 F.2d at ___ _______________ 105-06. B. B. __ 4 Appealability aside, appellate review of district court orders granting or denying summary judgment works the same way in qualified immunity cases as in other cases. See Morales v. ___ _______ Ramirez, 906 F.2d 784, 785 (1st Cir. 1990); Amsden v. Moran, 904 _______ ______ _____ F.2d 748, 752 (1st Cir. 1990), cert. denied, 111 S.Ct. 713 _____ ______ (1991). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). District court orders granting or denying brevis ______ disposition are subject to plenary review.2 Griggs-Ryan v. ___________ Smith, 904 F.2d 112, 115 (1st Cir. 1990); Garside, 895 F.2d at _____ _______ 48. III III ___ A. A. __ Through the medium of qualified immunity, the law strives to balance its desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the ____________________ 2We recognize that, in some relatively rare instances in which Rule 56 motions might technically be granted, the district courts occasionally exercise a negative discretion in order to permit a potentially deserving case to be more fully developed. See, e.g., McLain v. Meier, 612 F.2d 349, 356 (8th Cir. 1979); ___ ____ ______ _____ McInnis v. Harley-Davidson Motor Co., 625 F.Supp. 943, 958 _______ ___________________________ (D.R.I. 1986). We express no opinion on whether this negative discretion can flower in a case that turns on qualified immunity, nor do we speculate about what standard of review might then obtain. 5 performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive. See ___ Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). Hence, state ______ __________ officials exercising discretionary authority are entitled to qualified immunity insofar as their conduct does not transgress clearly established constitutional or federal statutory rights of which a reasonably prudent official should have been aware. See ___ Harlow, 457 U.S. at 818; Roque-Rodriguez, 926 F.2d at 107. In ______ _______________ this context, the phrase "clearly established" has a precise definition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, ________ _________ 640 (1987); accord Amsden, 904 F.2d at 752. ______ ______ In analyzing a qualified immunity defense, a court must ascertain whether the plaintiff has alleged, with the requisite particularity, that a state actor violated some right emanating from federal law.3 See Siegert v. Gilley, 111 S. Ct. 1789, 1793 ___ _______ ______ (1991); Amsden, 904 F.2d at 752. The next step is to ascertain ______ whether the right at issue was "clearly established" at the time of infringement. See Anderson, 483 U.S. at 640. If it was, an ___ ________ inquiring court can then presume that the defendant knew, or should have known, that his conduct was beyond the pale. See ___ Harlow, 457 U.S. at 818-19; Amsden, 904 F.2d at 752. ______ ______ ____________________ 3At the summary judgment stage, the allegation must, of course, be substantiated by competent evidence sufficient to create a genuine issue of material fact. See Mesnick v. General ___ _______ _______ Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 _________ _____ ______ S. Ct. 2965 (1992); see also Mitchell, 472 U.S. at 526. ___ ____ ________ 6 B. B. __ The protections of the Fourth Amendment are fundamental to the rights of all American citizens and apply unreservedly in Puerto Rico. See Torres v. Puerto Rico, 442 U.S. 465, 471 ___ ______ ___________ (1979). That prophylaxis guarantees, inter alia, every person's _____ ____ right to be free from unreasonable searches and seizures. See ___ Payton v. New York, 445 U.S. 573, 585 (1980). Warrantless ______ _________ searches or seizures occurring within a person's home are "presumptively unreasonable," id. at 586 a postulate which was ___ indelibly etched in jurisprudential granite at the time of Buenrostro's arrest. See id.; see also Santiago v. Fenton, 891 ___ ___ ___ ____ ________ ______ F.2d 373, 386 (1st Cir. 1989) (discussing state of the law in 1983); Wagenmann v. Adams, 829 F.2d 196, 209 (1st Cir. 1987) _________ _____ (similar). Payton sends the clearest signal for our purposes. ______ There, the Supreme Court held that a non-consensual, non-exigent, warrantless entry into a home to effectuate an arrest transgressed the Fourth Amendment, notwithstanding that probable cause sufficient to justify the same arrest in a more public arena may have existed. Payton, 445 U.S. at 590; see also ______ ___ ____ Minnesota v. Olson, 495 U.S. 91, 95 (1990) (describing Payton as _________ _____ ______ holding "that a suspect should not be arrested in his house without an arrest warrant"); New York v. Harris, 495 U.S. 14, 17- ________ ______ 18 (1990) (Payton "drew a line" prohibiting police from entering ______ a person's home without a warrant); United States v. Beltran, 917 _____________ _______ F.2d 641, 642 (1st Cir. 1990) (apart from exigent circumstances 7 or a consensual entrance, the Constitution requires the police to obtain a warrant "before entering a person's home to make an arrest"). Absent some legally cognizable justification, then, appellants violated a clearly established constitutional right when they unceremoniously hauled the plaintiff from hearth and home. C. C. __ Appellants attempt to salvage their qualified immunity defense by asserting various justifications for their actions. They claim, first and foremost, that they had probable cause to believe that Buenrostro was a fugitive from justice and, hence, to arrest and detain him. That is not, however, the dispositive criterion. Probable cause, without more, cannot legitimate a warrantless entry into a suspect's home. See Olson, 495 U.S. at ___ _____ 95; Payton, 445 U.S. at 587-90. ______ Appellants' remaining contentions can be grouped. They contend that the wanted person request was the functional equivalent of an arrest warrant.4 But it seems obvious to us that, in the context of seizing an individual within the confines of his own home, a wanted person request circulated by an out-of- state police department differs significantly from an arrest warrant issued by a neutral, detached magistrate within the ____________________ 4If it were correct, this contention would likely carry the day. See, e.g., Steagald v. United States, 451 U.S. 204, 214 ___ ____ ________ _____________ n.7, 221 (1981) (valid arrest warrant may justify apprehension of suspect in his own home, notwithstanding the absence of a search warrant); Payton, 445 U.S. at 602-03 (similar). ______ 8 jurisdiction where the dwelling is located. Alternatively, appellants contend that they entered the house with Buenrostro's consent a datum which, if true, would obviate the need for a warrant. Buenrostro, however, vehemently denies that he consented to the intrusion. At the summary judgment stage, therefore, the district court could not resolve the issue against him. See, e.g., Unwin v. Campbell, 863 F.2d ___ ____ _____ ________ 124, 136 (1st Cir. 1988) (if the record reveals a genuine dispute over a fact-specific question essential to the qualified immunity inquiry, summary judgment cannot be granted). What is more, the grouped contentions are both infected by an incurable strain of procedural default. In the court below, appellant described the qualified immunity issue as being "simply whether the police officers, at the time they arrested _________________________________________________________ the plaintiff, had probable cause to believe that plaintiff had _________________________________________________________________ violated the law." Memorandum in Support of Motion for Summary _________________ Judgment (Memorandum) at 18 (emphasis in original); see also id. ___ ____ ___ at 16. They eschewed any reliance on the WPR as a valid proxy for a conventional arrest warrant. Their moving papers nowhere suggested, let alone documented, that Buenrostro consented to the entry into his home. Thus, the "arrest warrant" and "consent" arguments are by the boards for purposes of this appeal. See ___ McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 (1st _____ __________________________________ Cir. 1991) (arguments made in a perfunctory or incomplete manner in the court below are deemed waived on appeal), cert. denied, _____ ______ 112 S. Ct. 1939 (1992); Clauson v. Smith, 823 F.2d 660, 666 (1st _______ _____ 9 Cir. 1987) (theories not advanced in the district court cannot be pressed for the first time on appeal). We will not paint the lily.5 On this scumbled record, the district court acted with impeccable propriety in rejecting the qualified immunity defense and refusing to enter a summary judgment predicated thereon. D. D. __ Although our analysis to this point disposes of the appeal, we add an eschatocol of sorts. Much of the parties' briefing and argumentation ventures beyond the easily visualized Fourth Amendment violation and discusses whether an additional constitutional deprivation resulted from the sheer length of Buenrostro's imprisonment. See Baker v. McCollan, 443 U.S. 137, ___ _____ ________ 145 (1979) (dictum).6 Given the posture of this appeal, ____________________ 5It should be noted that two of the appellants, Tapia Suarez and Lopez Feliciano, were supervisors, not directly involved in Buenrostro's arrest. In moving for summary judgment, however, they did not suggest that their involvement should be judged by a different standard; instead, they were content to lump themselves with the members of the extradition squad. We have repeatedly held that, if a defendant wishes to be separated from the pack and treated independently from his codefendants regarding qualified immunity, it is necessary that he make the distinction and present an appropriate argument to that effect in the trial court. See Brennan v. Hendrigan, 888 F.2d 189, 193 n.2 (1st ___ _______ _________ Cir. 1989); Domegan, 859 F.2d at 1065. Since appellants' moving _______ papers did not attempt to carve out any such differential niche in respect to either Tapia Suarez or Lopez Feliciano, we treat them on a par with the arresting officers. 6The Baker Court wrote: _____ We may even assume, arguendo, that, depending ________ on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated 10 however, the issue is a dead letter. We explain briefly. In the court below, appellants premised their qualified immunity defense strictly and solely on what they claimed was the officers' objectively reasonable conduct in effectuating Buenrostro's arrest.7 See Memorandum at 14-19. They cannot now ___ switch horses and argue that they are entitled to qualified immunity on the alleged Baker violation. Qualified immunity is, _____ after all, an affirmative defense, and the "right" to have it determined in an intermediate appeal can be waived if it is not properly asserted below. See, e.g., Roque-Rodriguez, 926 F.2d at ___ ____ _______________ 105-06; Fisichelli, 884 F.2d at 18-19 & n.2. __________ At any rate, the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983. ____________________ protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law." Baker, 443 U.S. at 145 (dictum); see also id. at 148 (Blackmun, _____ ___ ____ __ J., concurring). 7The district court, following appellants' lead, did not address the possibility of qualified immunity vis-a-vis the alleged Baker violation but merely rejected appellants' effort to _____ jettison that allegation for failure to state an actionable claim. See Buenrostro, 777 F. Supp. at 136 (holding that the ___ __________ plaintiff, in connection with his Baker theory, "has stated facts _____ sufficient to state a cause of action for . . . deliberate indifference"). Since we are operating under the Mitchell ________ exception to the finality principle, we lack jurisdiction to review that ruling at the present time. See Roque-Rodriguez, ___ _______________ 926 F.2d at 105-06. Thus, we decline to speculate, here and now, whether the Baker dictum limns a potentially viable cause of _____ action; or, if it does, whether such a claim can be supported on the facts sub judice. ___ ______ 11 See, e.g., Malley v. Briggs, 475 U.S. 335, 344 n.7 (1986); Monroe ___ ____ ______ ______ ______ v. Pape, 365 U.S. 167, 187 (1961); see also Wagenmann, 829 F.2d ____ ___ ____ _________ at 212-13; Springer v. Seaman, 821 F.2d 871, 876-79 (1st Cir. ________ ______ 1987). Since a jury could conceivably find a causal nexus between the unlawful arrest and the consequent imprisonment, the particulars of the imprisonment issue will have to be litigated. Hence, it would serve no useful purpose to address, in the isthmian confines of an interlocutory Mitchell-type appeal, ________ whether a Baker violation also occurred. In short, once it is _____ determined that the case must go forward on the Fourth Amendment issue, the length and circumstances of Buenrostro's detention are best examined at trial as part of the determination of damages flowing from the allegedly unlawful arrest. Cf., e.g.,, __ ____ Mitchell, 472 U.S. at 526 (as long as "the plaintiff's complaint ________ adequately alleges the commission of acts that violated clearly established law" and the plaintiff adduces "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts," the doctrine of qualified immunity will not shield a state actor from trial). IV IV __ We need go no further. On this record, the appellants are not entitled to qualified immunity on the Fourth Amendment claim.8 ____________________ 8In this case, there seem to be additional facts, not yet fully developed and-or resolved, which could potentially inform the ultimate decision on qualified immunity. Hence, the defendants remain free to adduce additional proof at trial in an effort to demonstrate that they, or some among them, should be 12 Affirmed. Affirmed. ________ ____________________ held harmless from damages by the doctrine of qualified immunity. See, e.g., Vazquez Rios v. Hernandez Colon, 819 F.2d 319, 329 ___ ____ ____________ _______________ (1st Cir. 1987). 13